UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, | No. 16-cv-00871-TLN-KJN |
| Plaintiff, | |
| v. | **ORDER** |
| AMERICAN RELIABLE INSURANCE COMPANY, | |
| Defendant. | |

This matter is before the Court on Defendant American Reliable Insurance Company's ("Defendant") Motion to Dismiss. (ECF No. 5.) Plaintiff Allstate Insurance Company ("Plaintiff") opposes the motion. (ECF No. 8.) Pursuant to this Court's March 8, 2017, Order (ECF No. 11), Plaintiff filed supplemental briefing addressing whether Plaintiff has Article III standing to bring its claims and whether those claims are ripe for adjudication.[1] (ECF No. 12.) The Court has carefully considered the arguments raised by the parties. For the reasons set forth below, Defendant's Motion to Dismiss is GRANTED.

/ / /

---

[1] Defendant failed to comply with this Court's order. (ECF No. 11 ("The parties are *each* instructed to submit supplemental briefing . . . .") (emphasis added).) Rather, Plaintiff represents that Defendant agrees that Plaintiff has standing and that the lawsuit is ripe for adjudication. (ECF No. 12 at 7.) Local Rule 230(c) identifies the proper method for indicating non-opposition. Defendant is admonished that further failures to comply with this Court's orders may result in sanctions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is an insurance coverage dispute arising out of an underlying action in Butte County Superior Court: *Spangler v. Carajuana et al.*, No. 164234 ("*Spangler*" or the "underlying action"). In *Spangler*, Paula Spangler ("Spangler") sued three people for injuries she suffered when a dog bit her. She sued the dog's owner, John Caruana ("Caruana").[2] (Compl., ECF No. 1 at ¶ 5.) She also sued a couple, Floyd and Laura Damschen (collectively "the Damschens"), who were taking care of Caruana's dog as a favor when the dog bit Spangler. (ECF No. 1 at ¶¶ 5, 10.)

The parties in the instant case are the insurers of the *Spangler* defendants. Plaintiff insured the Damschens. Defendant insured Caruana. Plaintiff has borne the expense of defending the Damschens in *Spangler*. (ECF No. 1 at ¶ 6.) Plaintiff contends that the Damschens' potential liability in *Spangler* also falls within the scope of the farm and ranch policy that Defendant issued Caruana. Plaintiff asked Defendant to contribute to the defense and indemnity of the Damschens, but Defendant refused. (ECF No. 1 at ¶ 12.)

Plaintiff filed this lawsuit on April 26, 2016. Plaintiff seeks a declaration that Defendant is required to defend and indemnify the Damschens in *Spangler*. Plaintiff also seeks equitable contribution and equitable subrogation. (ECF No. 1 at 6.)

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, the factual allegations of the complaint are assumed to be true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the well-pleaded allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2009)). "A claim has facial plausibility when the pleaded factual content

---

[2] Plaintiff indicates that Mr. Caruana's name was misspelled as "John Carajuana" in the underlying action. (ECF No. 1 at ¶5.)

1 allows the court to draw the reasonable inference that the defendant is liable for the misconduct
2 alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (citing *Twombly*, 550 U.S. at 556). But the
3 court "need not assume the truth of legal conclusions cast in the form of factual allegations."
4 *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

5      In ruling upon a motion to dismiss, the court may consider only the complaint, any
6 exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of
7 Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu*
8 *Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal.
9 1998). If the court finds that the complaint fails to state a plausible claim for relief, the court
10 "should grant leave to amend even if no request to amend the pleading was made, unless it
11 determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez*
12 *v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d
13 484, 497 (9th Cir. 1995)).

14 **III.   DISCUSSION**

15      Plaintiff asserts three causes of action: declaratory relief, equitable contribution, and
16 equitable subrogation. The Court addresses Plaintiff's claims for equitable contribution and
17 equitable subrogation before addressing Plaintiff's request for declaratory relief.

18     A. <u>Equitable Contribution</u>

19      Plaintiff contends that it is entitled to equitable contribution under California law because
20 Plaintiff and Defendant "share the same level of liability on the same risk" but Plaintiff "alone
21 has borne the expense of defending the Damschens" in *Spangler*. (ECF No. 1 at ¶ 16.) Plaintiff
22 seeks an order declaring this entitlement and requests that the order "stat[e] that [Defendant] is
23 required to pay its proportionate share of any sums" Plaintiff has spent or will spend defending
24 the Damschens with respect to the underlying action and any amounts that might be spent
25 indemnifying the Damschens with respect to the underlying action, regardless of whether spent to
26 settle the underlying action or satisfy a judgment entered in connection with it. (ECF No. 1 at 6.)
27      Assuming Plaintiff can eventually make out a claim for equitable contribution, the Court
28 concludes that Plaintiff's claim is not yet ripe. "[T]he question of ripeness may be considered on

1 a court's own motion." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).
2 The "ripeness doctrine precludes federal courts from exercising their jurisdiction over an action
3 that is filed before a real dispute exists between the parties." *See Hawaii Newspaper Agency v.*
4 *Bronster*, 103 F.3d 742, 746 (9th Cir. 1996). The basic rationale behind the ripeness doctrine "is
5 to prevent the courts, through premature adjudication, from entangling themselves in abstract
6 disagreements." *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580 (1985).

7       The ripeness doctrine contains both constitutional and prudential components. *Thomas v.*
8 *Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). The
9 constitutional component of the ripeness inquiry is similar to the injury-in-fact inquiry under the
10 standing doctrine. *Id*. at 1138–39. The prudential component "has a twofold aspect, requiring [a
11 court] to evaluate both the fitness of the issues for judicial decision and the hardship to the parties
12 of withholding court consideration." *Golden v. California Emergency Physicians Med. Grp.*, 782
13 F.3d 1083, 1086 (9th Cir. 2015) (internal quotation marks omitted). "A claim is not ripe for
14 adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed
15 may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks
16 omitted); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999) (en banc) (same).
17 Consequently, as a prudential matter, "courts often find claims for indemnification or contribution
18 are not ripe because the claims are contingent" upon the outcome of ongoing underlying
19 litigation. *Hecht v. Summerlin Life & Health Ins. Co.*, 536 F. Supp. 2d 1236, 1240–42 (D. Nev.
20 2008) (citing *Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 847 (1st Cir. 1990); *McRory v. Hobart*
21 *Bros. Co.*, 732 F.2d 1533, 1535 (11th Cir. 1984); *RLI Ins. Co. v. John H. Hampshire, Inc.*, 461
22 F. Supp. 2d 364, 369 (D. Md. 2006); *Urological Surgery Prof'l Ass'n v. Fecteau Benefits Group,*
23 *Inc.*, 359 F. Supp. 2d 24, 25–26 (D. N.H. 2005)).

24       The Court finds that the instant matter does involve claims that are contingent upon the
25 outcome of ongoing underlying litigation.. Plaintiff indicates that *Spangler* is ongoing. (*See* ECF
26 No. 1 at ¶¶ 5, 17.) It is a separate proceeding from the instant action and the instant action does
27 not involve all the parties in the underlying action. *See Hecht*, 536 F. Supp. 2d at 1241–42. The
28 instant action suffers from the same fitness problems that typically exist in cases seeking

1  equitable contribution and indemnification in those circumstances.  *See id*.  Simply put, the metes
2  and bounds of Defendant's obligation to Plaintiff, if any, will not crystalize until *Spangler* is
3  resolved.  Plaintiff has identified no unusual hardship that it will suffer that distinguishes this case
4  from any other case where an insurer contractually obligates to defend and indemnify its insured.
5  If anything, the fortuity that Mr. Caruana was insured at all, and that the Damschens may be
6  covered by this policy that they never contracted for, suggests there is less hardship.

7  Plaintiff cites *Golden* for the broad proposition that "prudential concerns should not play a
8  role in the Court's determination" of ripeness in cases not involving administrative proceedings.
9  (ECF No 12 at 7.)  *Golden* does not go nearly so far.  *Golden* observed the prudential ripeness
10 doctrine was enunciated by *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), and its progeny
11 and developed in the context of administrative actions.  *Golden*, 782 F.3d at 1086.  *Golden* further
12 observed that the concerns that prompted its development were (i) "judicial entanglement" with
13 administrative proceedings that are either not yet completed or never begun and (ii)
14 "consequences for many members of the general public, not just those directly in the immediate
15 controversy."  *Id*. (citing *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 670–71 (9th Cir.
16 2005).)  The *Golden* panel reasoned that "the special imperative, in administrative appeals, that
17 courts stay their hands slackens considerably *in a case such as this*" which implicated neither of
18 those two concerns.  *Id*. at 1087 (emphasis added).  It "therefore confirm[ed] expressly what the
19 logic of *Principal* necessarily implies: only the 'traditional ripeness standard' applies in actions to
20 enforce settlement agreements."  *Id*. at 1087.  "To satisfy this standard, [plaintiff's] claim must at
21 least present a substantial controversy between parties having adverse legal interests that savors
22 of sufficient immediacy and reality to warrant resolution."  *Id*. at 1087–88.

23 *Golden* involved an action where both parties to a settlement agreement were before the
24 court and one of "litigant[s was] resist[ing] his adversary's attempt to enforce a contract against
25 him."  *Id*.  There, the plaintiff refused to execute a writing memorializing an agreement to settle
26 certain litigation that the plaintiff had agreed to settle in open court.  *Id*. at 1084.  The plaintiff
27 argued the no-employment provision contained in the agreement "violate[d] California law as a
28 contract restraining the lawful practice of a profession" and constituted a material term."  *Id*. at

5

1085.  Consequently, he argued "the entire settlement agreement is . . . void and his lawsuit should be reinstated."  *Id.*

The instant case is distinguishable from *Golden*.  The second cause of action does not arise from contract.  *Crowley Mar. Corp. v. Boston Old Colony Ins. Co.*, 158 Cal. App. 4th 1061, 1068 (2008) ("[T]he right to equitable contribution does not arise from contract, because the multiple insurers that may share responsibility for the same loss have not contracted with each other—only with their respective insureds.").  Nor does the instant action involve both parties to a contract seeking to clarify the contours of their contractual relationship with each other, as was the case in *Golden*.  Indeed, Plaintiff is seeking to clarify the relationship between Defendant and *a third party not before this Court without that third party's participation*.  This implicates a prudential ripeness concern not present in *Golden*.  *See Golden*, 782 F.3d at 1087 (observing that "ordinarily" where a party seeks declaratory judgment on a private contract in an action against its counterparty the consequences of the litigation "affect just those directly in the immediate controversy").  For these reasons, Plaintiff's argument that prudential ripeness concerns should not be considered must be rejected.

Consequently, the Court finds Plaintiff's cause of action for equitable contribution is unripe and is accordingly DISMISSED without prejudice.

B.  Equitable Subrogation

Plaintiff also contends that it is entitled to equitable subrogation under California law because Defendant "has breached its contractual obligations towards the Damschens in bad faith." (ECF No. 1 at ¶ 20.)  The Court concludes that Plaintiff has failed to state a claim for equitable subrogation.

Equitable subrogation allows an insurer that paid coverage or defense costs to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss.  *Maryland Cas. Co. v. Nationwide Mut. Ins. Co.*, 81 Cal. App. 4th 1082, 1088 (2000).  To state a claim for equitable subrogation, the subrogee must not have been primarily liable for the loss.  *Fireman's Fund Ins. Co.*, 65 Cal. App. 4th 1279, 1292 (1998); *see also Sequoia Ins. Co. v. Royal Ins. Co.*, 971 F.2d 1385, 1391 (9th Cir. 1992) (applying California

1  law).

2  Plaintiff contends that both it and Defendant are primary insurers covering the Damschens

3  in the underlying action. (ECF No. 1 at ¶¶ 6–8, 16, 18.) Thus, Plaintiff has not pleaded one of

4  the "essential elements of an insurer's cause of action for equitable subrogation" against another

5  insurer — "the claimed loss was one for which the [plaintiff] insurer was *not* primarily liable."

6  *Fireman's Fund Ins. Co.*, 65 Cal. App. 4th at 1292 (emphasis in original); *see also Maryland Cas.*

7  *Co.*, 81 Cal. App. 4th at 1093 ("Respondents' policies remained primary policies with respect to

8  [their insured's] own negligence, creating an immediate obligation to defend. While respondents

9  had the right to obtain a partial reimbursement from other equally responsible insurers, they could

10 do so only under the equitable contribution doctrine.").³ In short, Plaintiff has failed to state a

11 claim for equitable subrogation. It is unclear whether Plaintiff can plead in good faith that it was

12 not primarily liable to the Damschens. Consequently, Plaintiff's cause of action for equitable

13 subrogation is DISMISSED without prejudice.

14     C.  <u>Declaratory Relief</u>

15 Plaintiff invokes the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration

16 that Defendant has a duty to defend and indemnify the Damschens. To obtain a declaratory

17 judgment, Plaintiff must have properly pleaded an underlying substantive claim. *See Am. States*

18 *Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). "The Declaratory Judgment Act creates

19 only a remedy, not a cause of action." *Bisson v. Bank of Am.*, 919 F. Supp. 2d 1130, 1139 (W.D.

20 Wash. 2013). As discussed *supra*, Plaintiff has not properly pleaded its substantive claims.

21 Consequently, Plaintiff's first "cause of action" for declaratory relief is DISMISSED.

22   **IV.**  **CONCLUSION**

23 For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 5) is hereby

24 GRANTED. Plaintiff may file an amended complaint within thirty (30) days of the date this

25 Order is filed. If Plaintiff does not timely file an amended complaint, it may only file an amended

26 complaint at a later date in accordance with Rule 15(a)(2) of the Federal Rules of Civil Procedure.

27

---

28   ³  Although Defendant did not make this argument, the Court may *sua sponte* dismiss a cause of action for failure to state a claim. *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987).

1       IT IS SO ORDERED.

3 Dated: March 27, 2017

                                  Troy L. Nunley  
                                  United States District Judge